## MEAD *vs.* COMBS.

A conveyance, made in consideration of the grantee's assuming the mortgages upon the property, amounting to one-fourth of its value, declared voluntary and void, as against the creditors of the grantor, as to three-fourths of the value; but being positively intended, also, to delay and defraud creditors, it was declared void *in toto*, and the purchaser (at a sheriff's sale of the property) entitled to hold the same free from all claim of the grantee, except for the amounts due on such mortgages held or paid by him, and the interest thereon, the rents and profits to be set off against so much of those debts as were due to the grantee.

This case was heard on an *ex parte* argument on part of the complainants, upon the bill and proofs taken upon an order for that purpose, on default of an answer, on the 20th day of April, 1865, the time for answering having expired on the 10th day of March, 1865. An answer was subsequently filed on the 3d day of May following, but without any order of the court or consent of the complainant, and it was not noticed by the complainant in the subsequent proceedings in the cause, although the depositions seem to have been taken upon notice, and the defendant attended by counsel before the examiner, and cross-examined the witnesses of the complainant. The suit was commenced in the name of John L. Mead, as complainant, but he having died, his death was suggested, and the suit was continued in the names of his heirs and devisees.

*Mr. S. Tuttle*, for complainants.

THE CHANCELLOR.

The complainants seek to redeem certain lands in Paterson from several mortgages held by the defendant, and to have a conveyance that was made by Richard Mead to the defendant of the equity of redemption of these lands, on the 20th day of November, 1861, set aside and declared void. The original complainant, John L. Mead, was the son, and the defendant was the son-in-law of Richard Mead, who died in February, 1864. In November, 1861, Richard Mead was seized of the premises in dispute, subject to four mortgages for $1829, of which three were held by Combs, and one of $400 by one Cornelius Schuyler. Richard Mead was about eighty years of age; his mind and capacity for business were in some degree affected by age, physical infirmity, and habitual intemperance. He had become somewhat involved in debt, principally by becoming security for others. William J. Ackerman held a note of one Quackenbush, endorsed and guaranteed by Richard Mead, and there were other claims against him outstanding. The property in question

K *

was worth $7000 or $8000. This property he conveyed to Combs by deed executed by him and his wife, dated November 21st, 1861, reciting a consideration of $2800 in hand paid, and subject to four mortgages. Subsequently, in February, 1864, Ackerman obtained a judgment in Passaic county Circuit Court against Richard Mead, on his note, and the property in question was levied upon and sold as the property of Richard Mead, by virtue of an execution issued against him on that judgment. J. L. Mead bought it at that sale for $456.

The sale to the defendant is alleged to be void, because it was made without any consideration paid, except the assumption of the mortgages, of about one fourth the value of the property, and because it was made for the purpose of defeating the creditors of Richard Mead, and was, therefore, as against them, fraudulent and void ; John L. Mead, the purchaser at the sheriff's sale, standing in the place of a creditor, and being entitled to have any conveyance which was void as against creditors, declared void as to him.

The only question in the case brought to my attention is, whether the facts upon which the relief is sought are sufficiently established by the evidence.

It appears by the evidence that the property was, at the conveyance to Combs, worth about $8000. It appears, also, that he paid no consideration, except to assume the mortgages, amounting to about $2000, or one fourth of the value of the property. It also appears, that the object of the conveyance was to prevent Mead from wasting his property by incurring debts foolishly, and by way of security for others, and to prevent creditors to whom he had become liable from recovering their debts. Quackenbush was one of these. The defendant did not pay, or offer to pay him his debt, but attempted unjustly to use the conveyance to defeat the recovery of this debt. As to three-fourths of the value of this property the deed is voluntary and void, as against the creditors of Richard Mead. But as it was not merely a deed without consideration, but was positively intended to delay and de-

fraud creditors, it must be declared void *in toto;* and the purchaser, Mead, or his representatives, is entitled to hold the same free from all claim of the defendant, except for the amounts due on the mortgages on the same at the conveyance to him, held or paid by him, and the interest thereon. The rents and profits received by the defendant must be accounted for and set off against so much of these mortgage debts as are due to him.

The deed to the defendant must be set aside and declared void, and an account taken of the amount due upon the mortgages held or paid off by the defendant, and the interest, and also of the rents and profits since the conveyance to him.